702 So.2d 1295 (1997)
PENSKE TRUCK LEASING CO., LP, Randy Allen Scheele, and Marlene D. McKuhen, Appellants,
v.
Randy MOORE, as Personal Representative of the Estate of Alice Denine Moore, Ted Crownover and Gay L. Crownover, as Co-Personal Representatives of the Estate of Christopher J. Crownover, Michelle Fields, as Personal Representative of Margaret Hammons, Appellees.
Nos. 96-2255 to 96-2257.
District Court of Appeal of Florida, Fourth District.
November 5, 1997.
Rehearing Denied January 12, 1998.
*1297 Edward R. Nicklaus of Nicklaus & Wicks, P.A., Coral Gables, and James C. Blecke of Deutsch & Blumberg, P.A., Miami, for appellants.
Robin S. Richards of Hill & Neale, Fort Lauderdale, and Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellant Marlene D. McKuhen.
Scott R. Gill of Law Offices of Scott R. Gill, P.A., and Ronald D. Poltorack of Law Offices of Ronald D. Poltorack, P.A., Fort Lauderdale, for appellee Randy Moore, as Personal Representative of the Estate of Alice Denine Moore.
Mary Margaret Schneider of Stanley M. Rosenblatt, P.A., Miami, for appellees Ted Crownover and Gay L. Crownover, as Co-Personal Representatives of the Estate of Christopher J. Crownover.
Bryce W. Ackerman of Simmons, Hart & Sheehe, Ocala, for appellee Michelle Fields, as Personal Representative of the Estate of Margaret Hammons Fields.
POLEN, Judge.
Defendants, Penske Truck Leasing Co., LP, a truck leasing company, Marlene D. McKuhen and Randy Allen Scheele ("Penske"), appeal an adverse judgment in a case involving a multi-vehicle accident in which three persons were killed. The accident occurred when a driver of another vehicle, Christopher J. Crownover, drifted across several lanes of traffic on Interstate 95, and crashed into the rear of the Penske truck which McKuhen and Scheele had parked on the side of the road in order to coordinate directions. Prior to pulling over to the shoulder of the highway, Scheele, operating the Penske truck which had been leased by McKuhen, was following McKuhen, who was operating a Hyundai automobile. Crownover and his passengers, Alice Denine Moore and Margaret Fields, were killed in the crash.
The plaintiffs' decedents sued Penske, and received awards of $206,889.97 for Crownover, $795,697.48 for Moore, and $248,468.59 for Fields, on the following percentages of negligence: Crownover50%; McKuhen (and Penske)35%; Scheele (and Penske) 15%. The breakdown of damages for each claim was as follows:

Crownover (Economic) $ 13,779.74
Crownover (Non-economic) 400,000.00
 _____________
Total $ 413,779.74
Moore (Economic) $ 395,697.48
Moore (Non-economic) 800,000.00
 _____________
Total $1,195,697.48
Fields (Economic) $ 48,468.59
Fields (Non-Economic) 400,000.00
 _____________
Total $ 448,468.59

Penske raises five points on appeal, some of which require reversal. It seeks a new trial on liability and the apportionment of fault only.

I
Penske first argues that the trial court should have granted a directed verdict on causation because, even assuming the truck was stopped on the shoulder of the highway contrary to statute, it was not the *1298 proximate cause of the accident. We disagree, as the issue of proximate cause was one to be determined by the jury upon proper instruction. Reasonable persons could have differed as to whether the improper parking of the Penske truck could have foreseeably led to a rear-end collision, such as the one that occurred. See Springtree Properties, Inc. v. Hammond, 692 So.2d 164 (Fla.1997)(holding that, in cases where the evidence raises any issue of material fact, the evidence is conflicting, or the evidence permits differing reasonable inferences as to proximate cause, the question of foreseeability as it relates to proximate cause must be left to the finder of fact); Bialek v. Lensen, 421 So.2d 654 (Fla. 1st DCA 1982)(holding that, notwithstanding defendant's illegal parking of his vehicle on the shoulder of the highway, the issue of proximate cause with respect to the accident that ensued was one properly determinable by the jury).

II
Penske next argues that the trial court violated its own in limine order by allowing the state trooper assigned to the case to testify about statutory violations committed by and citations issued to Penske. Before trial, the court had entered an order in limine excluding any testimony by any witness or comments by any attorney concerning citations issued, or attempted to be issued, to Penske. It contends that the order was violated when counsel for appellees and the state trooper engaged in the following exchange:
Q. And, if its not due to a mechanical breakdown, or a medical problem or a disablement, what do you do if you find out someone is parked over there?
A. Issue a traffic citation.
* * * * * *
Q. You made a determination that Vehicle Number 3, which was the McKuhen vehicle and Vehicle Number 2, were illegally parked on the interstate?
A. Yes.
We agree with Penske that the above comments violated both the in limine order as well as the basic tenets of Florida law. Florida law is well settled that questions suggesting that a driver has been charged with a traffic violation in connection with an accident constitute prejudicial error. Moore v. Taylor Concrete & Supply Co., Inc., 553 So.2d 787, 790 (Fla. 1st DCA 1989). In Albertson v. Stark, 294 So.2d 698, 699 (Fla. 4th DCA 1974), we explained the reason for this rule:
Common sense (and experience as well) tells us that to the average juror the decision of the investigating police officer, i.e., whether to charge one driver or the other with a traffic violation based upon the result of his investigation, is very material to, if not wholly dispositive of, that juror's determination of fault on the part of the respective drivers.
Id.; see also Spanagel v. Love, 585 So.2d 317 (Fla. 5th DCA 1991)(statement by police officer that there was no improper driving on the part of the defendant motorist required a new trial, as statement was tantamount to a declaration by the police officer that no traffic summons had been issued in the case).
We reject appellees' contention that any error that may have occurred was inadvertent, or, alternatively, that the question asked was not directly aimed at whether the vehicles at bar were illegally parked. Having the trooper testify that he would issue a traffic citation in a certain instance violates the spirit of Albertson and the order in limine. The jury could have attached undue importance to his testimony regarding whether he, in issuing the citation, determined that Penske's actions were negligent. Penske's objections to this testimony should have been sustained, and, if requested, a curative instruction given.

III
Penske also argues that the court erred in permitting the appellees' expert to testify that Scheele and McKuhen failed to use "reasonable care" by parking their vehicles in the emergency lane of the highway, and for him to interpret whether Penske violated a specific parking statute. Appellees, on the other hand, contend that any such error was invited, as counsel for Penske "opened the door" by asking the expert whether it was negligence or failure to use due care to drive off the road in the first place.
*1299 Ordinarily, we would agree that the expert's testimony clearly invaded the province of the jury. See Smaglick v. Jersey Ins. Co. of NY, 209 So.2d 475. 476 (Fla. 4th DCA 1968)(holding "it is patent that the jury was fully competent" to answer on its own the question asked of the expert as to whether the driver of the car exhibited "sensible control" of it); Mills v. Redwing Carriers, Inc., 127 So.2d 453 (Fla. 2d DCA 1961)(holding that, when facts are within ordinary experience of jury, conclusion therefrom will be left to them, and opinion of expert should be excluded where facts testified to are of a kind that do not require any special knowledge or experience to form a conclusion, or are of such a character that they may be presumed to be within the common experience of all persons); Rosenfeld v. Johnson, 161 So.2d 703 (Fla. 3d DCA 1964)(holding it was error to allow traffic officer's opinion on whether defendant had been "driving properly"). However, based on the record below, we do not find reversible error, as the questions asked by Penske's attorney regarding reasonable care invited the error. In eliciting testimony from the officer interpreting the statute and analyzing whether Penske's conduct was legal, he opened the door to appellee's questions on redirect examination as to whether or not Penske violated the statute by parking the truck where they did at the time of the accident. Nevertheless, since this case will be retried, and assuming Penske does not elicit these questions of the expert during examination, the trial court, on remand, should preclude this type of expert opinion testimony.

IV
Penske next argues that it should not have been held vicariously liable for the actions of McKuhen, because she was not driving the Penske truck at the time of the accident. We affirm on this issue. Penske, as the owner/lessor of the truck, is vicariously liable for McKuhen's negligent control of the truck under the dangerous instrumentality doctrine. Under this doctrine, when control of a vehicle is voluntarily relinquished to another, only a breach of custody amounting to conversion or theft will abrogate an owner of responsibility for its use or misuse. Susco Car Rental Sys. v. Leonard, 112 So.2d 832, 835-36 (Fla.1959). Any conditions placed on such use, as between the parties, are completely unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature. Id.; see also Kraemer v. General Motors Acceptance Corp., 572 So.2d 1363, 1364 (Fla.1990)(holding that a motor vehicle operated on a public highway is a dangerous instrumentality, and the owner who entrusts it to another to operate is liable for injury to others caused by the negligence of the person to whom the instrumentality was entrusted) (citation omitted).
Penske alternatively argues that the instruction given to the jury, with regard to determining Penske's liability for McKuhen's negligence, was unclear, as it did not differentiate between Penske's liability for McKuhen's operation of her vehicle as opposed to her control of the Penske truck. The instruction read, in pertinent part:
Whether Randy Allen Scheele and/or Marlene D. McKuhen separately or jointly were negligent in the operation, control or direction of the Penske truck or the Hyundai automobile involved in the accident ... and if so, whether such negligence was a legal cause of loss, injury or damage sustained by the plaintiff.
As Penske argues, it was impossible to determine from the jury's answer to this verdict interrogatory whether McKuhen was found liable for the negligent operation of her vehicle or the negligent control of the truck.
While we agree with Penske that the instruction was vague and unclear, we still must affirm. Pursuant to the "two issue rule," set forth in Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181, 1186 (Fla.1977), the law holds:
[W]here two or more issues are left to the jury, and of which may be determinative of the case, and a general verdict is returned, making it impossible to ascertain the issue(s) upon which the verdict was founded.... reversal is improper where no error is found as to one of the issues, as the appellant is unable to establish that he has been prejudiced. *1300 Under this rule, we must presume that the jury found for the appellees on both theories of negligence.
Penske further argues that the court improperly entered judgment pursuant to section 768.81(3) Florida Statutes (1995). Section 768.81(3), provides, in pertinent part:
[T]he court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.

Id. (Emphasis added.) It contends that entering judgment jointly against Penske, McKuhen and Scheele for 50% of all damages contradicts the above statute, providing that each party is liable on the basis of its own percentage of fault, and not on the basis of joint and several liability. While Penske correctly states the law, we find that any error in this regard was harmless, as Penske still was found to have a 50% total liability in the accident. Its other argument, that the court failed to impute Crownover's negligence to Moore in entering judgment against Penske for 100% of her economic damages, was never raised below, and, thus, we affirm on this basis as well.

V
We agree with Penske's final argument that the trial court erred in allowing the state trooper to give opinion testimony based on hearsay. The trooper testified as follows:
I talked to a Richard Cashwell and a Jean Cashwell as to what the driveror that Vehicle had been doing for approximately three miles prior to the crash, and also the approximate speed of Vehicle 1 at impact. Exactly what their statement was, I don't remember, and I don't know whether I've got it in here or not. I don't show any witness statements in here that I can find.
The trooper was then asked if it was his opinion that the car Crownover was operating came from the center lane, to which he responded, "He had been drifting from the center lane to the right lane, and then eventually off the road." Allowing this hearsay into evidence was erroneous. See Maklakiewicz v. Berton, 652 So.2d 1208 (Fla. 3d DCA 1995)(holding it was an abuse of discretion to allow police officer to testify as accident reconstruction expert where officer's conclusions were based on inadmissible hearsay accounts of incident).
We reject appellees' argument that this testimony was not hearsay because it was used only for impeachment of Mr. Cashwell by proof of a prior inconsistent statement, pursuant to § 90.614(2), Florida Statutes. Section 90.614(2) provides, in pertinent part:
Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate the witness on it, or the interests of justice otherwise require. If a witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic evidence of such statement is admissible.
§ 90.614(2), Fla. Stat. (1995). They specifically argue that testimony was admissible because Mr. Cashwell had first been given the opportunity to explain or deny the prior inconsistent statement. However, the record shows that he was never confronted with a specific statement. In fact, the only "opportunity" he was given to explain the statement was as follows:
Q. Did you ever have an opportunity to tell anyone, a police officer or anyone, that the car was in the center lane, and went from the center lane over to the emergency lane?
A. No. Not the center lane.
There was simply no predicate for impeachment.
Appellees respond that any such error was harmless, as Crownover was clearly negligent when he drifted from the far or center lane. We disagree; the trooper's testimony could have called the credibility of another witness into question and, thus, could have affected the jury's determination as to the percentage of Crownover's negligence.
*1301 We finally reject Penske's remaining contention that excerpts of the "Greenbook" were hearsay, and, therefore, improperly admitted into evidence. See Green v. Goldberg, 630 So.2d 606, 609 (Fla. 4th DCA 1993)(holding authoritative publications cannot be used as substantive evidence as it would constitute hearsay). The "Greenbook" is a common name for a publication used by the Florida Department of Transportation, and pertains to rules on highway design. As the appellees argue, the "Greenbook" is incorporated into rule 14-15.002 of the Florida Administrative Code, and, thus, the court could appropriately have taken judicial notice of it. § 90.202(9), Fla. Stat. (1995).
AFFIRMED in part; REVERSED in part and REMANDED for a new trial only on the issues of liability and apportionment of fault in accordance with this opinion.
SHAHOOD, J., and KOENIG, JULIE, Associate Judge, concur.